**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**TANNER RAY HEDRICK,**

           **Plaintiff,**

**v.**                                     **Civil Action No. 3:23-CV-73
(GROH)**

**PHILP [sic] NIXON, and
MICHEAL [sic] BEVERAGE,**

           **Defendants.**

## REPORT AND RECOMMENDATION

### I.      INTRODUCTION

On March 16, 2023, the *pro se* Plaintiff, a state inmate[1] currently incarcerated at the Northern Correctional Center in Moundsville, West Virginia, initiated this civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1.[2] After lengthy litigation described more fully below, the Plaintiff filed a third amended complaint on April 26, 2024. ECF No. 48.

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that Plaintiff's complaint be dismissed with prejudice.

---

[1] According to the West Virginia Division of Corrections online offender search https://apps.wv.gov/OIS/OffenderSearch/DOC/Offender/Search, the Plaintiff is serving a sentence following a conviction for retaliation against a public official, in Wayne County case number 19-F-118.

[2] All ECF numbers cited herein are in 3:23-CV-73, unless otherwise noted.

## II.    FACTUAL AND PROCEDURAL HISTORY

On March 16, 2023, the pro se Plaintiff, filed a complaint (the "original complaint") in the above-styled civil rights action pursuant to 42 U.S.C. § 1983. ECF No. 1. After obtaining permission from the Court, on September 12, 2023, the Plaintiff filed an amended complaint (the "first amended complaint"). ECF No. 22. On November 6, 2023, the Plaintiff filed a motion to substitute party, and seeking the issuance of a summons for all named Defendants. ECF No. 27. The Court construed that motion as a motion to amend, and on February 1, 2024, the Court granted in part a motion to amend the complaint, directing the Plaintiff to file any amended complaint on the Court-approved form not later than twenty-one days after receipt of the order. ECF No. 30. Service for the order was accepted on February 5, 2024. ECF No. 32. Because the Plaintiff did not file an amended complaint by February 26, 2024, on March 13, 2024, the undersigned filed a Report and Recommendation addressing the first Amended Complaint. ECF No. 33.

Thereafter, on March 15, 2024, the Plaintiff filed a "motion to review amended complaint" with an attached Court-approved complaint form, and the proposed second amended complaint (the "second amended complaint"). ECF Nos. 35, 35-1. Based on the Plaintiff's filings in ECF Nos. 35 and 35-1, on March 20, 2024, the District Court declined to adopt the Report and Recommendation, and reassigned the case to the undersigned. ECF No. 37.

The Plaintiff's second amended complaint was filed by the Clerk of Court on March 20, 2024. ECF No. 40.  On April 8, 2024, the Plaintiff filed another motion to amend the complaint. ECF No. 45. That motion was granted on April 12, 2024, and the Plaintiff was directed to file any amended complaint not later than May 12, 2024. ECF No. 46. On April

26, 2024, the Plaintiff filed a third amended complaint (the "Complaint"), which contains the Plaintiff's most recent allegations against the Defendants.[3] ECF No. 48.

The Plaintiff's Complaint alleges five claims for relief, all of which are alleged to have occurred at Huttonsville Correctional Center: (1) on January 1, 2023, the Plaintiff overheard a conversation between another prisoner, Oscar Combs, Jr. ("Combs"), and Defendant Correctional Officer Nixon ("Nixon") relating to the HVAC system. According to the Plaintiff, Nixon told the other prisoner that he and Defendant Correctional Officer Beverage ("Beverage") had "tampered" with the HVAC system. The Plaintiff alleges that as a result of these actions, the temperature in his cell dropped, causing the water in his toilet to freeze over, and subjecting the Plaintiff to freezing conditions. Further, the Plaintiff contends that Beverage admitted to Combs that "he would go [and] tamper with the HVAC system every time [the] HVAC system is [acting] up." [ECF No. 48 at 7–8]; (2) Beverage was deliberately indifferent and acting outside his duty as a correctional officer when he divulged a confidential dialogue related Claim 1 [Id. at 9]; (3) Nixon was deliberately indifferent and acted outside his official duties when he conspired with Beverage [Id.]; (4) the Plaintiff and Combs immediately wrote affidavits to support Claims 1 through 3 "[b]ecause they [knew] they were wronged" [Id.]; and (5) the Plaintiff is suing Nixon and Beverage in an "unofficial" capacity because they "step[ped] outside that [capacity] when they touch[ed] the HVAC system." [Id.].

The Plaintiff claims he suffered physically and mentally "from the cold living conditions he was subject to on January 1, [ ] 2023." Id. at 10. He further asserts that he

---

[3] In his Motion to Amend his Complaint [ECF No. 45], the Plaintiff also sought to dismiss his claims as to previously named Defendants Marshell [sic], Searls, Stowe, and Hinchman. These previously named Defendants were not included as Defendants in the Plaintiff's Third Amended Complaint [ECF No. 48].

"lost his dignity [and] is constantly stress[ed] out [and] par[a]noid wondering if he [is] going to subjected to this again." ECF No. 48 at 10. The Plaintiff further states that he does not have much body fat. Id. As relief, the Plaintiff seeks "[$] 60,000[.00] – [$] 70,000[.00]" in punitive damages, and asks the Court to order the Defendants attend counseling for empathy. Id.

The Plaintiff repeatedly references affidavits which he filed in the original, first amended and second amended versions of his complaint. Defendants concede that those affidavits should be considered herein.[4] Attached to the original Complaint are copies of notarized statements of Oscar Combs Jr. and the Plaintiff. ECF No. 1-1. In his statement, Mr. Combs states that on January 1, 2023, Defendant Nixon advised Combs that the heat had been turned up too high, but that it would cool off soon. Id. at 2. He asserts that Defendant Nixon said, "Officer Beverage knows how to turn the heat down so we went and turned it down and open[ed] the outside air ducts." Id. Combs asserts that a short time later he noticed that air temperature inside his cell "was freezing cold." Id. Further, Combs states that on January 11, 2023, he spoke with Beverage about the "air/heat" when Beverage stated, "yeah every time them dummies cut it up I'll go cut it back down." Id.

In his statement, the Plaintiff contends that on January 1, 2023, he overheard Combs tell Defendant Nixon that it was warm in his cell, and Nixon responded that it would not be warm for too much longer. Id. at 1. Following this dialogue, the Plaintiff

---

[4] Defendants write: "Hedrick continues to rely upon these affidavits in his Third Amended Complaint, and consideration of same is proper at the motion to dismiss stage as they are integral to Hedrick's Third Amended Complaint." See ECF No. 59-1 at 2, n. 1.

noticed the temperature in his cell got "real cold." Id. Further, the Plaintiff repeated the January 11, 2023, conversation between Combs and Beverage. Id.

**B.    Defendants' Motion to Dismiss**

The Defendants filed a Motion to Dismiss the Third Amended Complaint[5] (the "Complaint"), and a Memorandum of Law in support thereof on August 20, 2024. ECF Nos. 59, 59-1. In their Memorandum of Law, the Defendants argue that:

(1) as to Claim 1, the Plaintiff has failed to state a cause of action for violation of his Eighth Amendment rights because he cannot meet the two-pronged test set forth in Farmer v. Brennan, 511 U.S. 825 (1994), which requires a plaintiff to demonstrate:

> (a) a deprivation of a basic human need which was objectively sufficiently serious; and
>
> (b) that subjectively the officials acted with a sufficiently culpable state of mind because conditions which are merely restrictive or harsh "are part of the penalty that criminal offenders pay for their offenses against society."

ECF No. 59-1 at 5–11 (citing De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003), Rhodes v. Chapman, 452 U.S. 337, 347 (1981));

(2) as to Claims 2 and 3, the Plaintiff has failed to state any cause of action upon which relief may be granted as to alleged deliberate indifference because both claims fail to meet the required pleading standards established by Iqbal and Twombly[6] and are predicated "on the same underlying facts and do not introduce new allegations that would alter the conclusion that Hedrick's conditions were neither extreme nor prolonged."

---

[5] Defendants' memorandum details the named Defendants in the original complaint, first amended complaint, second amended complaint, and the elimination of all Defendants named in those previously filed complaints, leaving only Nixon and Beverage as current Defendants. ECF No. 59-1 at 1–2.

[6] Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Further, the allegations fail to allege that the Defendants acted with the requisite mental state.  [Id. at 11–12];

(3) as to Claim 4, the Plaintiff's assertion that he filed affidavits from himself and Combs, but "filing affidavits alone does not constitute a legally recognized claim [Id. at 11]; and

(4) as to Claim 5, the Plaintiff's assertion that he is suing the Defendants in their "unofficial capacity," fails to state a valid claim for relief, and "does not provide a basis for independent legal relief." [Id. at 12–13.].

The Defendants further assert that they are entitled to qualified immunity "because they are alleged to have acted within the scope of their official duties without violating any clearly established constitutional or statutory rights that a reasonable person in their position would have known." ECF No. 59-1 at 13. The Defendants assert that if no constitutional or statutory right was violated, qualified immunity applies, and no further inquiry is necessary. Id. at 14.

**C.    Plaintiff's Memorandum Filed on September 12, 2024**

On September 12, 2024, the Plaintiff filed a Motion for Leave to File One Copy [ECF No. 67 at 1] because every filing is transmitted into electronic case filing, and a Memorandum [ECF No. 67 at 3]. The Plaintiff's Memorandum states that he moves the Court to proceed to discovery because the Defendants' motion to dismiss is meritless, and asserts that:

> The Plaintiff does [compromise] a little in this case at the end of the Motion But Plaintiff is resolute In the Affirming his case an [sic] assertions. also The Plaintiff does state defendant did wrong under color of law [which] He did not understand what that [meant] in the Beginning Plaintiff understood That It was asking if he want [to] sue in [their] indiv[idual] [capacity]. But It

> is clear in the Motion that Plaintiff underst[ood] what statements means an [sic] May have a change of change in this case.

ECF No. 67 at 3.

### D.    Plaintiff's Response to the Motion to Dismiss

On September 12, 2024, the Plaintiff filed a response in opposition to the Defendants' motion to dismiss. ECF No. 68. Therein, the Plaintiff requests that his case proceed to discovery, and contends that the defense of qualified immunity "is questionable." Id. at 1, 4. The Plaintiff asserts that the undersigned already determined the applicability of immunity when his request to proceed in forma pauperis was granted. Id. at 2. Further, the Plaintiff states that when he was granted permission to proceed in forma pauperis that the case was also determined not frivolous or malicious, or failed to state a claim upon which relief may be granted. Id.

The Plaintiff asserts that he is suing the Defendants in their unofficial capacity "[b]y [p]erforming a [BOP] duty [which] they had no written approval to do by [Huttonsville] Administration." Id. at 3. According to the Plaintiff, the Defendants had to "know they were doing wrong." Id. Further, the Plaintiff contends that the conversation he overheard between Nixon and Combs constituted an admission that Beverage was a co-defendant who tampered with the HVAC system, by opening the system to the outside. The Plaintiff states that "[i]t got severely cold" and that the Governor of West Virginia declared a state of emergency because of the weather conditions. Id. at 4. The Plaintiff further asserts that he suffered physically and mentally from the cold, and that days after this incident the temperature reached 15 degrees Fahrenheit. Id. at 5.

As to Claims 2 and 3, the Plaintiff asserts that his claim of deliberate indifference is plausible and has merit. Id. The Plaintiff further posits, "the question is did the two defendant[s] know not to [t]amper with the HVAC system[?]" Id. at 6. According to the Plaintiff, the Defendants claim of immunity should fail because the Defendants acted under color of state law, but "went outside" of their duties. Id.

### III.    LEGAL STANDARD

### A.    Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those pro se pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[7] is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual

---

[7] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided, "The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

> power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

**B.    § 1983 Claims**

The Supreme Court has explained that:

> Title 42 U.S.C. § 1983 provides a cause of action against "[e]very person who, under color of any statute ... of any State ... subjects, or causes to be subjected, any citizen ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws...." The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.

Wyatt v. Cole, 504 U.S. 158, 161 (1992) (citing Carey v. Piphus, 435 U.S. 247, 254–257

(1978). In Gomez v. Toledo, 446 U.S. 635 (1980), the Supreme Court succinctly stated

what a plaintiff must allege to sustain a civil rights action:

> By the plain terms of § 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right acted under color of state or territorial law.

Gomez, 446 U.S. at 640.

The Supreme Court has recognized that "Section 1983 'is not itself a source of

substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

conferred.' " Albright v. Oliver, 510 U.S. 266, 271, 114 S. Ct. 807, 811–12, 127 L. Ed. 2d

114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 2694, n.

3, 61 L.Ed.2d 433 (1979)). Further the Court instructs that "[t]he first step in any such

claim is to identify the specific constitutional right allegedly infringed." Graham v. Connor,

490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989); and Baker v. McCollan, *supra,* 443 U.S., at 140, 99 S.Ct., at 2692.

The Prisoner Litigation Reform Act (PLRA) requires proof of "physical injury." There is no recovery for mental or emotional stress without consequent physical injury. 42 U.S.C. § 1997e(e) provides, "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)."

### C.    Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint  must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure to state a claim.  Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly,  it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)).  In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light

most favorable to the plaintiff.  Mylan Labs, Inc. v. Matkari, 7 F.3d1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

## IV.    ANALYSIS

A review of the complaint pursuant to 28 U.S.C. § 1915A(b), reveals that the Plaintiff fails to present a claim upon which relief can be granted. The Plaintiff's five claims for relief all assert that he was subjected to conditions of confinement which are unconstitutional pursuant to the Cruel and Unusual Punishment Clause of the Eighth Amendment. All of those claims are related to the Plaintiff's complaint that his cell was not a comfortable temperature. However, his claims are without merit.

"Prisoners alleging that they have been subjected to unconstitutional conditions of confinement must satisfy the Supreme Court's two-pronged test set forth in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)." Scinto v. Stansberry, 841 F.3d 219, 225 (4th Cir. 2016), *cert. denied sub nom*. Phillip v. Scinto, 138 S. Ct. 447, 199 L. Ed. 2d 340 (2017). "In order to establish that she has been subjected to cruel and unusual punishment, a prisoner must prove (1) that "the deprivation of [a] basic human need was objectively 'sufficiently serious,' " and (2) that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " De'Lonta v. Angelone, 330 F.3d at 634 (quoting Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993)). As explained in Scinto, the "objective" first prong of Farmer requires plaintiffs to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.' " 841 F.3d at 225. Scinto further held that to be "sufficiently serious," the deprivation must be "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged

conditions." Id., quoting De'Lonta v. Angelone, 330 F.3d 630, 634 (4th Cir. 2003) (internal quotation marks and citation omitted).

Generally, courts have found that "extreme deprivations are required to make out a conditions-of-confinement claim. Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation.'" Strickler v. Waters, 989 F.2d 1375, 1380 N. 3 (4th Cir. 1993) (cleaned up, quoting Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981), and Wilson v. Seiter, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324 (1991)). However, "the Constitution does not mandate comfortable prisons, and prisons . . . which house persons convicted of serious crimes, cannot be free of discomfort." Rhodes v. Chapman, 452 U.S. at 349, 101 S. Ct. at 2400.

The Supreme Court has recognized that certain conditions of confinement violate the Eighth Amendment. In Taylor v. Riojas, 592 U.S. 7, 141 S.Ct. 52 (2020), the Supreme Court found that the Petitioner's constitutional rights were violated when he was:

> Confined [ ] in a pair of shockingly unsanitary cells. The first cell was covered, nearly floor to ceiling, in massive amounts of feces: all over the floor, the ceiling, the window, the walls, and even packed inside the water faucet. Fearing that his food and water would be contaminated, Taylor did not eat or drink for nearly four days. Correctional officers then moved Taylor to a second, frigidly cold cell, which was equipped with only a clogged drain in the floor to dispose of bodily wastes. Taylor held his bladder for over 24 hours, but he eventually (and involuntarily) relieved himself, causing the drain to overflow and raw sewage to spill across the floor. Because the cell lacked a bunk, and because Taylor was confined without clothing, he was left to sleep naked in sewage.

Taylor v. Riojas, 592 U.S. at 7–8, 141 S. Ct. at 53 (internal citations omitted).

Clearly, the conditions of which the Plaintiff complains do not rise to the level described in <u>Taylor</u>. Furthermore, various district courts in the Fourth Circuit have found that intemperate cells do not violate the Eighth Amendment restriction against cruel and unusual punishment. The District of Maryland declined to find a violation of the Cruel and Unusual Punishment Clause when the Plaintiff alleged a correctional officer "left him 'in a wet cell,' causing excessively cold temperatures, and shut off his access to water for two weeks." <u>Fields v. Landon</u>, No. CV JKB-20-3039, 2023 WL 6119728, at *5 (D. Md. Sept. 18, 2023). The court wrote:

> Conditions of confinement that "involve wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. However, conditions that are merely restrictive or even harsh "are part of the penalty that criminal offenders pay for their offenses against society."

<u>Fields v. Landon</u>, 2023 WL 6119728, at *5, quoting <u>Rhodes v. Chapman</u>, 452 U.S. 337, 347 (1981).

The District of South Carolina rejected a condition of confinement claim where the Plaintiff claimed that "his mattress and blanket were confiscated for six days, he was not allowed to have any toilet tissue for six days, his clothes were taken away from him for six days, his cell was cold, he had no running water in his cell, and he was forced to sleep on a steel cot for six days." <u>Thompson v. Brown</u>, No. CIV.A. 3:11-318-TMC, 2011 WL 6012592, at *1 (D.S.C. Nov. 8, 2011), <u>report and recommendation adopted,</u> No. 3:11-318-TMC, 2011 WL 6012550 (D.S.C. Dec. 2, 2011).

In the Western District of North Carolina, the Court found that the plaintiff's failed to establish an Eighth Amendment violation based on his allegedly cold cell:

> While this Court does not dispute that Plaintiff may feel cold in his cell, especially during the colder weather months, "extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment. Applying the law to the facts of this case, Plaintiff has failed to establish that he was subject to temperatures in his cell that constituted a sufficiently serious deprivation of a basic human need. Moreover, Plaintiff also failed to establish that he sustained a serious physical or emotion injury due to the alleged cold temperatures in his cell.

Williams v. Weisner, No. 5:07CV8-03-MU, 2007 WL 2111378, at *4 (W.D.N.C. July 19, 2007), quoting Hudson v. McMillian, 503 U.S. 1 (1992).

Here, the Plaintiff asserts five claims that his Eighth Amendment rights were violated. All five claims are variations on his complaint that his variable cell temperature, and the actions of the Defendants in "tampering" with the prison HVAC system violated his Eighth Amendment rights. However, none of those claims meet the two-pronged Farmer test to demonstrate an Eighth Amendment violation for unconstitutional conditions of confinement.[8]

## A.    The Plaintiff's First Claim

First, the Plaintiff complains that on January 1, 2023, he overheard a conversation between a fellow prisoner and Defendant Nixon regarding Correctional Officer Beverage's "tampering" with the HVAC system in the cell pod in which he was housed. Following this conversation, the Plaintiff claims that he was subjected to freezing temperatures. ECF No. 48 at 7–8. Regardless of the accuracy of the Plaintiff's allegations, even if the incident

---

[8] Not only do the Plaintiff's allegations regarding the reduced temperature in his cell fail to raise a claim for deprivation of a basic human need that was objectively serious, but also, the Plaintiff fails to state that he received a physical injury required to justify a claim under § 1983. The Plaintiff merely contends he "suffer[ed] phy[s]ically from this coldness an[d] still does." ECF No. 22 at 12. Accordingly, even if the temperature of his cell would give rise to a deprivation of rights claim pursuant to Farmer, his claim would fail because he did not suffer a physical injury as a result thereof.

occurred as the Plaintiff reports, he cannot meet the objective first prong of <u>Farmer</u>, which requires him to demonstrate that "the deprivation alleged [was], objectively, 'sufficiently serious.' " <u>Scinto</u>, 841 F.3d at 225. As the Supreme Court further explained in <u>Scinto</u>, a deprivation must be "sufficiently serious," and "extreme" by posing "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." <u>Id.</u>

Here, the Plaintiff does not meet the first prong of the <u>Farmer</u> test, because he cannot demonstrate that he was subjected to a serious or significant physical or emotional injury by being housed in a cell at a reduced temperature. Nor does the Plaintiff's claim meet the <u>Scinto</u> standard that the reduced temperature was "extreme," and thereby posed "a serious or significant physical or emotional injury resulting from the challenged conditions," or "a substantial risk of such serious harm resulting from . . . exposure to the challenged conditions." The deprivation complained of, that the temperature in his cell was too cold, did not deny the Plaintiff "the minimal civilized measure of life's necessities" sufficiently grave to form the basis of an Eighth Amendment violation, as required by <u>Rhodes</u>, 452 U.S.at 347, 101 S.Ct. at 2399.[9] Because the Plaintiff cannot meet the first prong of <u>Farmer</u>, the Court need not address the second subjective prong. For all these reasons, the Court finds that the Plaintiff's first claim for relief is without merit, does not state a claim upon which relief may be granted, and should be dismissed with prejudice.

**B.    The Plaintiff's Second Claim**

The Plaintiff's second claim, that Beverage was deliberately indifferent to the circumstances complained of in Claim 1, fails to state a claim upon which relief may be

---

[9] Even assuming the temperature of the Plaintiff's cell was lowered, he does not contend that he was deprived of bedding, clothing, blankets, or other necessities in his cell.

granted. ECF No. 48 at 9. The Plaintiff argues that Beverage's actions in divulging a confidential dialogue about Claim 1, constituted action outside of his official duties as a correctional officer. Id. It appears[10] that the Plaintiff's only allegation in Claim 2 of direct action taken against him by Beverage, was that Beverage repeated a confidential dialogue. Id.

In Farmer, the Supreme Court recognized that the Eighth Amendment imposes duties on prison officials "who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994) quoting Hudson v. Palmer, 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). Further, the Supreme Court held that:

> A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. at 837, 114 S. Ct. at 1979.

Here, the Plaintiff alleges through reference to Claim 1, that the temperature in his cell was lowered to "freezing conditions," and he broadly asserts that he was injured physically and mentally as a result of the reduced temperature.[11] Construed liberally, the

---

[10] The Complaint reads, "Mr. Beverage was acting outside of his Duty as correctional officer by [divulging] a dialo[gue] in manner of no Confidence at no time was there a confidential agreement or NDA. In Course of Claim 1." ECF No. 48 at 9.

[11] Although the Plaintiff contends he "suffer[ed] phy[s]ically [and] mentally from the cold living conditions he was subject to" on January 1, 2023, he lost his dignity and is consistently stressed and paranoid from his exposure to cold" [ECF No. 48 at 10], he fails to identify any physical injury, related

Plaintiff alleges that Beverage acted through his own individual actions, and was deliberately indifferent to the Plaintiff's conditions of confinement. To the extent that the Plaintiff alleges that he was subjected to cruel and unusual punishment, he alleges that he was subject to freezing temperatures. To support his claim, he alleges that he overheard a conversation where Nixon advised Combs that Beverage was personally responsible for any action or inaction on or about January 1, 2023. ECF No. 48 at 7–8. However, regardless of whether the Plaintiff's allegations of hearsay to support his claim have merit, the conditions of confinement which he complains of are not violations of the Eighth Amendment. Accordingly, the Plaintiff cannot state a claim upon which relief may be granted because he cannot demonstrate that Beverage caused the conditions of Plaintiff's confinement on January 1, 2023, or that those conditions rise to the level of a Constitutional violation.

Although the Plaintiff failed to allege that he was physically injured as a result of the cold temperature in his cell, even if the Court were to consider such a claim for failure to provide medical care for cold exposure, the Plaintiff fails to allege or establish that he presented a serious medical need, or a denial of medical care or inadequate medical treatment, which was disregarded by Beverage.

The Supreme Court has long recognized that:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

---

treatment, denial of treatment, or inadequate treatment required to pursue a § 1983 claim.

Estelle v. Gamble, 429 U.S. 97, 104–05, 97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (cleaned up). In order to state a cognizable civil rights claim related to medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." Estelle, 429 U.S. at 106, 97 S. Ct. at 292. Here, not only does the Plaintiff fail to allege any specific physical injury, he also fails to allege any treatment, denial of treatment, and/or inadequate treatment for injuries related to the temperature of his cell.

The Plaintiff contends that after Beverage tampered with the HVAC system, his cell became cold, and he was subjected to freezing conditions. That allegation does not support a claim that the acts or omissions of Beverage were sufficiently harmful to evidence deliberate indifference to any serious medical need of the Plaintiff, or otherwise present a claim that the Defendant's actions constituted an excessive risk to inmate health or safety. Accordingly, the Plaintiff's second claim fails to present a deliberate indifference claim and should be dismissed with prejudice.

### C.     The Plaintiff's Third Claim

The Plaintiff's third claim is that Nixon was deliberately indifferent to the Plaintiff's conditions, acted outside of his official duty, and "conspired" with Beverage. ECF No. 48 at 9. Liberally construed, the Plaintiff claims that Nixon and Beverage conspired to create conditions of confinement which jeopardized the Plaintiff's health or safety in violation of his right to be free of cruel and unusual punishment. However, the Plaintiff fails to state a claim upon which relief may be granted when the action or inaction of Nixon or Beverage are considered under the Farmer standard that the Defendants must both know of and

19

disregard an excessive risk to inmate health or safety. Concern about the reduction of the temperature in the Plaintiff's cell does not constitute an excessive risk to the Plaintiff's health or safety.

Further, the Plaintiff does not allege acts or omissions by Nixon and Beverage which were "sufficiently harmful to evidence deliberate indifference to serious medical needs," as required by Estelle v. Gamble. Because only such indifference that offends 'evolving standards of decency' constitutes a violation of the Eighth Amendment, the Plaintiff's claim that his cell was cold on a single date fails to allege an Eighth Amendment violation. Accordingly, the undersigned finds that the Plaintiff's Eighth Amendment rights were not violated by the low temperate in his cell on a single day.

The deprivation which the Plaintiff complains of, a cold cell, does not present a serious medical need, or disregard for an excessive risk to inmate health or safety, and fails to state a claim upon which relief may be granted. The temperature reduction complained of did not deny the Plaintiff "the minimal civilized measure of life's necessities" sufficiently grave to form the basis of an Eighth Amendment violation. The allegations in Claim 3 fail to demonstrate that Nixon or Beverage knew of and disregarded an excessive risk to inmate health or safety at the time the complained of events occurred.

Because the Plaintiff cannot meet the first prong of Farmer, the Court need not address the second subjective prong. For all these reasons, the Court finds that the Plaintiff's third claim for relief is without merit, does not state a claim upon which relief may be granted, and should be dismissed with prejudice.

### D.    The Plaintiff's Fourth Claim

Fourth, the Plaintiff's claim that he and another individual, Oscar Combs, immediately prepared affidavits to support Claims 1 through 3, "[b]ecause they [knew] they were wronged," fails to state a claim upon which relief may be granted. ECF No. 48 at 9. The claim asserted in the space for Claim 4 asserts that Nixon and Beverage imposed "cruel punishment." Id. Liberally construed, Claim 4 asserts that the Defendants purposefully lowered the temperature of the Plaintiff's cell in order to inflict cruel and unusual punishment upon him. Id.

Again, the Plaintiff's fourth claim for relief fails to meet the Farmer standard to challenge conditions of confinement. As discussed above, the conditions which the Plaintiff claims violate his Constitutional rights have not been found to reach the level required by the first prong of Farmer. Because the Plaintiff cannot demonstrate that he was deprived of a basic human need which was objectively "sufficiently serious," he cannot meet the first prong of Farmer. Accordingly, the Court need not address the second prong of the test. For all of these reasons, the Plaintiff's fourth claim for relief fails to state a claim upon which relief may be granted, and should be dismissed with prejudice.

### E.    The Plaintiff's Fifth Claim

Fifth, and finally, is the Plaintiff's claim that he is suing Nixon and Beverage in their unofficial capacity. ECF No. 48 at 9. The Plaintiff contends that the Defendants stepped outside their official capacity when they "touched" the HVAC system. Id. However, this claim again fails to state a claim upon which relief may be granted. The Plaintiff claims that he suffered physically and mentally based on the actions of the Defendants.[12] ECF

---

[12] Claim 1 identifies Defendant Beverage as the actor who "tampered with the HVAC system," but the supporting facts section asserts that "Mr. Hedrick suffered phy[sically] an[d] mentally" due to the "cold

No. 48 at 10. The deprivation which the Plaintiff complains of is that the HVAC system was operated by a BOP employee who was not authorized to do so. Such a claim fails to present an Eighth Amendment violation for cruel and unusual punishment, and should be dismissed with prejudice.

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the **Third Amended Complaint [ECF No. 48]** be **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief may be granted. It is further **RECOMMENDED** that the Defendants' Motion to Dismiss [ECF No. 59] be **GRANTED,** and that the Plaintiff's Motion for Leave to File One Copy [ECF No. 67] be **GRANTED**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas

---

living conditions." ECF No. 48 at 8, 10. Construed liberally, the Plaintiff's fifth claim alleges injury by Beverage and Nixon.

v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to any counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:**      September 25, 2024

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE